UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DIANA RICCO, | ) |
| | ) |
|     Plaintiff, | ) |
|   v. | ) |
| | ) Case No. 13-cv-7805 |
| SOUTHWEST SURGERY CENTER, | ) |
| LLC d/b/a CENTER FOR MINIMALLY | ) Judge John W. Darrah |
| INVASIVE SURGERY and | ) |
| MICHAEL CHERNY, individually, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a five-count Complaint, alleging two Family and Medical Leave Act ("FMLA") claims against Southwest Surgery Center ("Southwest") and Michael Cherny ("Cherny") individually: Count I is an FMLA interference claim, and Count II is an FMLA retaliation claim. Plaintiff also alleges two state law claims against Surgery Center: Count III is a breach of contract claim, and Count IV is a promissory estoppel claim. Finally, Count V alleges tortious interference with employment expectancy against Cherny. On August 15, 2014, Defendants filed a Motion for Summary Judgment on all counts. For the reasons stated below, Defendants' Motion for Summary Judgment is denied.

### LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v.*

*Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment. Local Rule 56.1(b)(3)(C) further permits the nonmovant to submit a statement "of any additional facts that require the denial of summary judgment . . . ." To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

**BACKGROUND**

Plaintiff began working in a full-time capacity for Defendants in January of 2011 as a pre-admission registered nurse. (Compl. ¶ 8.) On April 16, 2013, Plaintiff was absent from work and called Defendants to advise that she would not be at work due to illness. (*Id*. at ¶ 10.) Plaintiff also faxed a note from Dr. Papadopolous, stating that she was under the doctor's care, was seen in his office on April 16, 2013, that she was to be excused from work until April 26, 2013, and that she was to be reevaluated. (*Id*. at ¶ 10.) On April 25, 2013, Plaintiff faxed Defendants another note from Dr. Papadopolous, stating that she was under the doctor's care, was seen in his office on April 25, 2013, that she was to be excused from work until May 4, 2013, and that she was to be reevaluated. (*Id*. at ¶ 11.) On May 6, 2013, Plaintiff faxed Defendants another note from Dr. Papadopolous, stating that she was under the doctor's care,

was seen in his office on May 6, 2013, that she was to be excused from work until May 13, 2013, and that she was to be reevaluated. (*Id*. at ¶ 12.)

Plaintiff received a letter, dated May 8, 2013, from Cherny. (*Id*. at ¶ 13.) This letter contained an acknowledgement of Plaintiff's doctor's notes. (*Id*. at ¶ 13.) The letter requested that Plaintiff provide information regarding her medical condition by her next appointment on May 13, 2013, and that information could be used "to explore your circumstances to potentially identify solutions for your possible return to work." (*Id*. at ¶ 13.) On May 11, 2013, Plaintiff faxed Cherny a letter, stating that she was seeing Dr. Papadopolous on May 13, 2013, and that she would have him send Cherny the requested information. (*Id*. at ¶ 14.) On May 13, 2013, Plaintiff faxed a note from Dr. Papadopolous, which stated that Plaintiff has sciatica, stress, and anxiety, requiring continued medical leave until May 23, 2012. (*Id*. at ¶ 15.) The fax also contained a request that Defendants send FMLA papers for Dr. Papadopolous to complete. (*Id*. at ¶ 15.) Defendants terminated Plaintiff via a letter, dated May 16, 2013. (*Id*. at ¶¶ 17, 18.)

On October 31, 2013, Plaintiff filed a five-count Complaint against Defendants. On August 15, 2014, Defendants filed a Motion for Summary Judgment on all counts.

## LEGAL STANDARD

Summary judgment is proper if there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *See Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012). The facts, and all reasonable inferences drawn from them, must be viewed in the light most favorable to the non-moving party. *Reget v. La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010). The non-moving party is given "the benefit of the doubt" only when the record reflects adequate evidence on both sides of a

3

factual issue. *Tri-Gen Inc. v. Int'l Union of Operating Eng'rs*, *Local* 150, *AFL-CIO*, 433 F.3d 1024, 1030 (7th Cir. 2006) (citing *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 367 (7th Cir. 1997). At the summary judgment stage, the court may not "make credibility determinations or weigh the evidence." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 505 (7th Cir. 2010).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Seng- Tiong Ho v. Taflove*, 648 F.3d 489, 496 (7th Cir. 2011). The non-moving party must present specific facts establishing the existence of a genuine issue requiring a trial. *Id*. at 496. This means providing more than a scintilla of evidence to establish a genuine issue of material fact. *Chaib v. Ind.*, 744 F.3d 974, 981 (7th Cir. 2014). Both parties must support their position by citing "to particular parts of materials in the record" or by demonstrating that the "adverse party cannot produce admissible evidence in support of the fact." Fed.R.Civ.P. 56(c)(1). "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). A summary judgment motion is defeated where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) *(*quoting *Anderson* 477 U.S. at 248 (1986)).

**ANALYSIS**

*FMLA Claims*

FMLA Interference

Under the FMLA, an eligible employee is entitled to a total of 12 weeks of leave during any 12-month period for "a serious health condition that makes the employee unable to perform the functions of [their] position." 29 U.S.C. § 2612(a)(1)(D). It is "unlawful for any employer to

4

interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1).

In Count I, Plaintiff alleges Defendants interfered with her FMLA rights by failing to provide her notice of her eligibility to take medical leave under the FMLA, failing to designate her leave as FMLA-qualifying, failing to notify her of the amount of leave that would be counted against her FMLA entitlement, and denying her FMLA rights. An FMLA interference claim requires the plaintiff to establish: (1) she was eligible for the FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) her employer denied her FMLA benefits to which she was entitled. *Leonard v. Uhlich Children's Advantage Network*, 481 F.Supp.2d 931, 936 (N.D. Ill. 2007) (citing *Burnett v. LFW, Inc.*, 472 F.3d 471, 477 (7th Cir. 2006)). Defendants do not dispute Plaintiff's eligibility or their coverage under the FMLA.

An employee is entitled to FMLA leave when she is: "(1) afflicted with a 'serious health condition' and (2) that condition renders her unable to perform the functions of her job." *Burnett*, 472 F.3d at 477. A "serious health condition" includes "illness, injury, impairment, or physical or mental condition that involves: (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a healthcare provider." 29 U.S.C. § 2611(11). An employee must alert their employer to the "seriousness of the health condition" when requesting FMLA leave. *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 725 (7th Cir. 2007). Merely contacting the employer about illness-related absences does not adequately communicate the seriousness of the medical condition. *Phillips v. Quebecor World RAI, Inc.*, 450 F.3d 308, 311-12 (7th Cir. 2006). The notice obligation is satisfied where the employee

provides information indicating that she likely has an "FMLA-qualifying condition." *Leonard*, 481 F.Supp.2d at 936. Once an employee gives notice of the probable need for medical leave, the employer has a duty to determine whether the proposed leave qualifies as FMLA leave or to ask for more information in order to make that determination. *Burnett*, 472 F.3d at 480.

Defendants assert that the only information provided by Plaintiff with regard to her absence on April 16, 2013, was that "she was 'okay' without further explanation for her absence." (Def. 56.1(a) ¶ 39.) Plaintiff contends that she only spoke to the receptionist after being unable to reach her supervisor and that she sent a note from her doctor on April 16, 2013. (Pl. 56.1(b) ¶ 39). However, in Plaintiff's deposition, she explained that she called Southwest and told them "[she] was not coming into work today" and told the receptionist she "was okay." (Pl. Dep., 115: 11-20.) She admitted to not providing any other specific facts as to why she was not coming in that day. (Def. Ex. E, 115: 21-24.) Plaintiff also admitted that she did not send any documentation to Southwest on April 16, 2013. (Def. Ex. E, 117: 19-22). Defendants further assert that on April 17, 2013, Plaintiff again did not come to work and expressed that "she would be 'sending a note.'" (Def. 56.1(a) ¶ 40.) Plaintiff explained that she spoke to the receptionist on April 17th and said, "I am under doctor's care. I am going to be sending a note." (Pl. Dep., 122: 9-12.)

From April 25, 2013 through May 8, 2013, Plaintiff faxed Southwest a series of medical slips from a Dr. Papadopolous, to the attention of Dr. Sweeney. (Def. 56.1(a) ¶ 41.) The notes from Dr. Papadopolous, dated April 16, 2013, April 25, 2013, and May 6, 2013, all state that the Plaintiff was under his care, the date on which Plaintiff was seen, the amount of time she was to be excused from work, and that she was to be evaluated. (Def. Ex. J at 2, 3, 6.) The medical

6

slips did not provide any information with respect to Plaintiff's medical condition, diagnosis, prognosis, ability to perform the requirements of her job, or indication of whether or when she would return to work. On May 8, 2013, Cherny requested more information with regard to Plaintiff's medical circumstances as they related to her ability to perform her job. (Def. Ex. K at 2.) In response, Plaintiff provided a doctor's note on May 13, 2013, which stated that Plaintiff has sciatica, stress, and anxiety, and that she should be excused from work until May 23, 2013, "to be reevaluated that day." (Def. Ex. M at 3.) The fax cover sheet for the note requested that FMLA papers be sent to Dr. Papadopolous. (Def. Ex. M at 2.)

Plaintiff argues that her April 17, 2013 phone call and subsequent faxes of doctor's notes from April 16, 2013, April 25, 2013, and May 6, 2013, expressed that she was under a doctor's care, which should have put Defendants on notice that she was invoking FMLA leave. Further, the May 13, 2013 doctor's note indicated her illness. However, as the Seventh Circuit has held, a request for medical leave does not put an employer on notice unless the employee provides information regarding the nature of the medical problem. *Phillips*, 450 F.3d at 312. Even when Defendants asked for more specific information, Plaintiff's response vaguely asserted an ailment and requested more time off. Plaintiff never specified how this affected her ability to work, how much longer she needed, and when she expected to be back. Defendants' duty to inquire was not triggered until Plaintiff's note, on May 6, 2013, specifically requested FMLA paperwork. At that time, Defendants should have provided notice of her eligibility to take medical leave under the FMLA, designated her leave as FMLA-qualifying, and notified Plaintiff of the amount of leave that would be counted against her FMLA entitlement. However, she was terminated before Defendants did so.

7

Termination of employment may equate to a denial of benefits. *Nicholson v. Pulte Homes Corp.*, 690 F.3d 819, 827 (7th Cir. 2012); *see also Kauffman v. Federal Exp. Corp.*, 426 F.3d 880, 884 (7th Cir. 2005). A logical inference can be drawn in a situation such as this, where "the timing of the [termination] decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave." *Kohls v. Beverly Enter. Wis., Inc.*, 259 F.3d 799, 806 (7th Cir. 2001). That inference depends on the supporting evidence Plaintiff supplies with regard to the timing of the termination decision and the actual leave. In *Nicholson*, the plaintiff-employee alleged that the decision to terminate her occurred after she had begun her leave. *Nicholson*, 690 F.3d at 827. However, the plaintiff-employee lacked substantive evidence past this speculative allegation. *Id*. Therefore, plaintiff's speculation was insufficient to overcome defendants' reasoning that the decision to terminate her prior to her leave was based on her failure to show progress on her performance-improvement plan, and not on her leave. *Id*. at 827-28. Further, plaintiff could not point to anything else in the record that discredited the employer's basis for postponing the conveyance of termination to the plaintiff-employee because they needed to arrange for her office to be covered first. *Id*.

Defendants rely on Sweeney's "unconditional" decision to terminate Plaintiff on April 15, 2013, prior to Plaintiff's attempted invocation of FMLA rights, as dispositive evidence that Plaintiff's FMLA claims fail as a matter of law. Defendants cite to the affidavit and deposition testimony of both Sweeney and Cherny to support their position that Plaintiff was ineligible to invoke FMLA rights because the decision to terminate her employment occurred on April 15, 2014, prior to her May 6, 2013 explicit invocation of the right. (Dkt. No. 19-6, 73: 7-11, 75: 23-24, 96: 16-20; Dkt. No. 19-2, ¶¶ 3, 6; Dkt. No. 19-7, 112: 20-24; Dkt. No. 19-1, ¶¶ 16, 18.)

Sweeney and Cherny allege that on April 15, 2013, another female Southwest employee realized that her coat was missing from the female employee's locker room. (Dkt. No. 18, ¶ 21.) The missing coat was reported to Cherny, who instructed his assistant to search the lockers in the women's locker room. (*Id*. at ¶ 22.) After performing a search of the lockers, with another employee present, Cherny's assistant found the missing coat inside Plaintiff's locker and reported the information to Cherny. (*Id*. at ¶ 23.) Cherny confronted Plaintiff about the incident on April 15, 2013, and subsequently, on the same date, disclosed the details of the incident to Sweeney. (*Id*. at ¶¶ 27, 31.) Pursuant to Cherny's conversation with Sweeney, Sweeney directed Cherny to terminate Plaintiff's employment on April 15, 2013. (*Id*. at ¶ 32.) Cherny intended to carry out this instruction from Sweeney next time Plaintiff reported to work. (*Id*. at ¶ 34.) Beginning the following day, April 16, 2013, Plaintiff did not return to work. (*Id*. at ¶ 38.) From April 16, 2013 through May 16, 2013, Plaintiff continued to send doctor's notes each of which postponed Plaintiff's return to work. (*Id*. at ¶ 41.) Defendants cite to Sweeney's reiteration of his decision to fire Plaintiff on April 15, 2013 when he inquired as to why Cherny had not yet terminated her employment. (*Id*. at ¶ 45.)

Plaintiff argues that Cherny's deposition testimony where he states that Sweeney told him, "if it was true, that I needed to let her go and terminate her," together with his failure to conclusively determine whether Plaintiff stole the coat, exhibit that the coat incident was not the cause of her termination. (Dkt. No. 28 at 9; Dkt. No. 26-2, 112: 20-113: 9.)[1] Plaintiff further contends that the May 8, 2013 letter from Cherny, which stated, "it is imperative that you and I

---

[1] It is noteworthy that Cherny's deposition in which he stated that Sweeny's instruction to fire Plaintiff occurred on June 4, 2014, whereas the affidavit saying that the instruction to terminate Plaintiff was not conditional is dated August 14, 2014.

9

discuss this situation regarding another employee's personal property so that I can make an appropriate decision regarding your employment future at Southwest Surgery Center," constitutes an admission by Defendants that their termination decision had yet to be made. (Dkt. 19-11.)

Defendants have articulated a reason for Plaintiff's termination: the coat incident and their concern for employees feeling safe in the workplace. (Dkt. No. 18 at ¶ 32.) Defendants have also provided a reason for their delayed action with respect to the execution of the termination - that beginning the next day after the coat incident and after the termination decision had been made, April 16, 2013, Plaintiff began a month-long absence from work. (*Id*. at ¶ 38.) However, Plaintiff has cited to evidence rebutting this reason. Cherny stated in his deposition testimony that Sweeney told him to fire Plaintiff only if he determined if she actually took the coat:

> Q. During the conversation that you testified to on the 15th of April, did Dr. Sweeney tell you to fire Diana Ricco?
> A. He said if it was true, that I needed to let her go and terminate her.

(Dkt. No. 26-2, 112: 20-24). But Cherny never conclusively determined if Plaintiff did so. (Dkt. No. 26-2, 113: 7-9.) The May 8, 2013 letter from Cherny states that, in addition to exploring Plaintiff's medical issues, "it is imperative that you and I discuss this situation regarding another employee's personal property *so that I can make an appropriate decision regarding your employment future* at Southwest Surgery Center." (Emphasis added.) (Dkt. 19-11.) The letter indicates that the decision to terminate Plaintiff had not been made at the time it was sent. These two pieces of evidence are completely inconsistent with a decision to terminate Plaintiff on April 15, 2013.

10

Plaintiff has established a genuine issue of fact as to the relationship between her protected FMLA leave and her termination. Defendants' Motion for Summary Judgment is denied as to Count I.

*FMLA Retaliation*

In Count II, Plaintiff alleges that Defendants terminated her employment in retaliation for exercising her FMLA rights. Employers are prohibited from retaliating against an employee attempting to exercise FMLA rights. *Pagel v. TIN Inc.*, 695 F.3d 622, 631 (7th Cir. 2012). Thus, the employer is restricted from using an employee's "FMLA leave as a negative factor in promotion, terminations, and other employment decisions." *Id*. An FMLA retaliation claim necessarily requires a showing of Plaintiff's engagement in "FMLA-protected activity"; as such if Plaintiff cannot meet the burden of proof with respect to an element of an FMLA interference claim, any attempts at a retaliation claim will fall short. *Nicholson*, 690 F.3d at 828.

Retaliation claims under the FMLA are established through direct or indirect proof. *Burnett*, 472 F.3d at 481. Through the direct method, Plaintiff bears the burden of presenting evidence that Defendants terminated her "*on account of* [her] protected activity." *Id.* (emphasis added). Establishing a *prima facie* case of retaliation requires proof of "(1) statutorily protected activity, (2) a materially adverse employment action taken by the employer, and (3) a causal connection between the two." *Long v. Teachers' Retirement System of Illinois*, 585 F.3d 344, 349-50 (7th Cir. 2009). The direct method can be proven through direct evidence or a "convincing mosaic" of circumstantial evidence. *Jajeh v. County of Cook*, 678 F.3d 560, 570 (7th Cir. 2012). There are three categories of circumstantial evidence which create a "convincing mosaic"

including: "(1) suspicious timing, ambiguous statements and other bits and pieces from which an inference of retaliatory intent might be drawn; (2) evidence that similarly situated employees were treated differently; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Id*.

Suspicious timing alone does not create an issue of material fact as to causation. *Buie v. Quad/Graphics*, *Inc*, 366 F.3d 496, 506 (7th Cir. 2004). An employee may be able to demonstrate that the employer's purported reasons for the decision "lack credence" by providing evidence that, "(1) the proffered reasons have no basis in fact, (2) that the proffered reason did not actually motivate his discharge, or (3) they are insufficient to motivate discharge." *Mechnig v. Sears*, *Roebuck & Co*., 864 F.2d 1359, 1365 (7th Cir. 1988). Through the direct method, Plaintiff will not survive summary judgment where Defendant can establish that Plaintiff was not harmed by retaliation through presentation of "unrebutted evidence that [the employer] would have taken the adverse employment action against the plaintiff *even if* he had no retaliatory motive." *Burnett*, 472 F.3d at 481 (emphasis added). Plaintiff's FMLA retaliation claim will only survive summary judgment where her allegations create a "triable issue" regarding whether the adverse employment action taken by the employer had a discriminatory motive, in other words, rebutting the legitimate reason the employer had for the action at issue. *Goelzer v. Sheboygan County, Wis*., 604 F.3d 987, 995-96 (7th Cir. 2010).

Under the indirect method of proof, Plaintiff must establish a *prima facie* case exhibiting that "after engaging in the protected conduct only [she], and not any similarly situated employee who did not [engage in protected conduct], was subject to an adverse employment action even though [she] was performing [her] job in a satisfactory manner." *Buie*, 366 F.3d at 503. Where

12

a defendant presents "unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment." *Id*. (quoting *Rogers v. City of Chicago*, 320 F.3d 748, 754-55 (7th Cir.2003)). Plaintiff has not included any reference to other similarly situated employees; thus, she must prove retaliation through direct evidence.

Plaintiff alleges that she attempted to invoke her FMLA rights with each of the three doctor's notes she sent dated, April 16, 2013, April 25, 2013, and May 6, 2013; and also when she explicitly asked for the FMLA paperwork to be sent to Dr. Papadopolous. (Dkt. No. 28 at 6-7.) She further alleges that the adverse employment action of Cherny on behalf of Southwest through the May 16, 2013 termination letter was void of any basis for the termination. (*Id*. at 3.) Though timing cannot be the sole basis for the claim of retaliation, the termination letter was sent three days after Plaintiff's request for the FMLA paperwork.

As noted above, Cherny's deposition indicates that Sweeney said that Cherny should fire Plaintiff only if it was determined she had stolen the coat, but Cherny failed to conclusively determine whether Plaintiff did steal the coat. (Dkt. No. 28 at 9; Dkt. No. 26-2, 112: 20-113: 9.) Also, the May 8, 2013 letter from Cherny, stating, "[I]t is imperative that you and I discuss this situation regarding another employee's personal property so that I can make an appropriate decision regarding your employment future at Southwest Surgery Center," creates a genuine

issue of whether the termination decision had been made before Plaintiff specifically requested FMLA leave. (Dkt. 19-11.)[2]

Plaintiff has created a genuine issue of fact by showing suspicious timing and providing some evidence that the justification for her termination was pretextual. Defendants' Motion for Summary Judgment is denied as to Count II.

*State Claims*

Breach of Contract

In Count III, Plaintiff claims that Surgery Center's Employee Handbook is a contract that created an enforceable right to a 12-week medical leave of absence and to time-and-one-half pay for additional hours worked. To sustain a breach of contract claim under Illinois law, plaintiff must establish: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *Minnesota Elevator*, *Inc. v. Imperial Elevator Servs.*, *Inc.*, 758 F.Supp.2d 533, 537 (N.D. Ill. 2010). Under Illinois law, an employment relationship that does not include a fixed term of employment is presumed to be at-will. *LaScola v. U.S. Sprint Commc'ns*, 946 F.2d 559, 563 (7th Cir. 1991). An at-will employee may be terminated at any time for any reason. *Id*. Illinois courts have interpreted the "at-will" employment as a presumption that can be overcome by

---

[2] Plaintiff also cites Cherny's statements during a telephone hearing with the Illinois Department of Employment Security. Defendants point out that 820 ILL. COMP. STAT. § 405/1900(A) states that "information obtained from any individual or employing unit during the administration of this Act shall . . . (1) be confidential . . . (3) not be used in any court in any pending action or proceeding . . . (4) not be admissible in evidence in any action or proceeding other than one arising out of this Act." 820 Ill. Comp. Stat. § 405/1900(A) (2013). However, "in federal question cases, the general rule is that only federal privileges are applicable; state law privileges are not incorporated into federal common law." *Scott v. City of Peoria*, 280 F.R.D. 419, 422 (C.D. Ill. 2011) (citing *EEOC v. Illinois Dept. of Employment Sec.*, 995 F.2d 106 (7th Cir.1993)).

evidence that the parties contracted otherwise. Exceptions to the at-will termination rule are: "(1) if the firing contravenes public policy; (2) the employee is terminated in violation of particular conditions stated by the parties; (3) under certain circumstances, a clear and definite oral agreement for permanent employment based on sufficient consideration may be enforced even where the agreement does not mention a definite term." *Id*. at 563-64. (citing *Gordon v. Matthew Bender & Co., Inc.*, 562 F. Supp. 1286, 1294 (N.D. Ill. 1983)).

Plaintiff argues that Defendants' reliance on *Dinkins v. Varsity Contractors, Inc*, 04-cv-1438, 2005 WL 599979 (N.D. Ill. 2005), is misplaced because the employee handbook in that case contained a disclaimer. (Dkt. No. 28 at 12.) In order for an employee handbook to meet the requirements of contract formation, a plaintiff must show: "(1) the language of the policy statement contains a promise clear enough that an employee would reasonably believe that an offer has been made, (2) the statement was disseminated to the employee in such as manner that the employee was aware of its contents and reasonably believed it to be an offer, and (3) the employee accepted the offer by commencing or continuing work after learning of the policy statement." *Dinkins*, 2005 WL 599979 at *14.

Plaintiff makes a persuasive argument that her case is distinguishable from *Dinkins*, in which the court relied on the handbook's use of "*may* be eligible" and which contained a disclaimer in finding that a contract had not been created. *Id*. Whether an individual could reasonably believe that the Employee Handbook was a contract is a question of fact left to the jury. There is also an issue as to whether Plaintiff is entitled to overtime pay. Plaintiff admitted that, as a salaried employee, she would receive overtime pay only if she worked over eight hours in one day or forty hours in one week. (Dkt. No. 19-5, 51: 6-18.) Whether an individual could

reasonably believe this to be true given Plaintiff's status and the language in the Employee Handbook is an issue of fact best left to a jury. As such, Defendants' Motion for Summary Judgment is denied as to Count III.

## Promissory Estoppel

In Count IV, Plaintiff claims, in the alternative to Count III, that if the Employee Handbook was not a contract, it should still be enforced as such under the doctrine of promissory estoppel. The Illinois Supreme Court follows a four-prong test to determine whether a promissory estoppel claim may succeed. Plaintiff is required to prove: "(1) defendants made an unambiguous promise to plaintiff, (2) plaintiff relied on such promise, (3) plaintiff's reliance was expected and foreseeable by defendants, and (4) plaintiff relied on the promise to its detriment." *Dumas v. Infinity Broad. Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). A promissory estoppel claim succeeds if all contract elements are present and only consideration is lacking. *Id*. Therefore, a plaintiff must present evidence of an "unambiguous promise which, but for the existence of bargained-for consideration, would constitute an enforceable contractual agreement." *Id*. The doctrine of promissory estoppel is based on the premise of protecting innocent parties; and, as such, the promisee's reliance must be reasonable and justifiable. *Talanda v. KFC Nat. Mgmt. Co.*, 863 F.Supp.664, 670 (N.D. Ill. 1994). Again, whether Plaintiff's reliance on the Employee Handbook was reasonable and justifiable is a question of fact for a jury. Consequently, Defendants Motion for Summary Judgment is denied as to Count IV.

## Tortious Interference with Employment Expectancy

In Count V, Plaintiff claims that Cherny tortiously interfered with her employment relationship with Southwest. Under Illinois law, a claim of tortious interference with

16

employment expectancy requires the same evidence as a claim for tortious interference with business expectancy or economic advantage. *Shah v. National Ass'n of Sec. Dealers*, 98-cv-5355, 1999 WL 240342, at * 3 (N.D. Ill. 1999). Plaintiff must establish: "(1) plaintiff's reasonable expectation of entering into a valid employment relationship, (2) defendant's knowledge of the plaintiff's expectancy, (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid employment relationship, (4) damages to the plaintiff resulting from such interference." *Botvinick v. Rush Univ. Med. Ctr.*, 574 F.3d 414, 417 (7th Cir. 2009). Illinois has recognized that an at-will employee may have a cause of action for tortious interference. *Ali v. Shaw*, 481 F. 3d. 942, 945 (7th Cir. 2007) (citing *Fellhauer v. City of Lake Geneva*, 142 Ill.2d 495 (Ill. 1991)). However, the tortious behavior must be directed toward a third party with whom the expected employment or business relationship was to occur. *Id*. A corporate officer acting on behalf of a corporation can be held liable for interference with employment expectancy only where he places his own interests ahead of the corporation's interest. *Vickers v. Abbot Labs.*, 308 Ill.App.3d 393, 411 (Ill. App. Ct. 1999). Where an officer's action was taken pursuant to a legitimate interest of the company, the officer has immunity. *Id*. To be tortious, an officer's actions must be done without justification and with malice. *Id*.

   Plaintiff argues that, "Cherny accused [her] of stealing [the] coat because he was angry about losing the 2013 March Madness pool, having to pay [her] and Agatha's winnings and giving it to Cindy as a tip." (Compl. ¶ 65.) Defendants have alleged a legitimate purpose for pursuing the issue of the coat being found in Plaintiff's locker and her lack of explanation; theft is serious, and Defendants want their employees to feel safe in the workplace. (Dkt. No. 18 ¶ 32.)

17

Plaintiff's signed declaration states that she and Agatha, another employee, went to the locker room before lunch so that Plaintiff could give money to Agatha. (Dkt. No. 26-10.) The coat was not in Plaintiff's locker at that time. (Dkt. No. 26-10.) Whether Cherny was pursuing a legitimate interest of the company or whether his actions were malicious and without justification is a question for the jury. Consequently, Defendants' Motion for Summary Judgment is denied as to Count V.

## CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment [16] is denied.

Date:	November 14, 2014	/s/ _____
	JOHN W. DARRAH
	United States District Court Judge